**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

TIMOTHY JONES AND JENNIFER
JONES, as Parents and Next Friends of
NOAH TIMOTHY JONES (Deceased),

        Plaintiffs,

vs.

WINNEBAGO INDUSTRIES, INC., an
Iowa corporation, and KWIKEE
PRODUCTS COMPANY, INC., a
Washington corporation,

        Defendants.

No. C 05-3042-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING DEFENDANT
WINNEBAGO'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
ON APPLICABLE LAW**

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *B. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    *A. Winnebago's Motion For Partial Summary Judgment* . . . . . . . . . . . . 9
        *1. Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . 9
        *2. Standards for summary judgment* . . . . . . . . . . . . . . . . . . 12
        *3. Is there a "true conflict" of laws?* . . . . . . . . . . . . . . . . 14
        *4. Choice-of-law rules* . . . . . . . . . . . . . . . . . . . . . . . . 15
        *5. The § 145(2) "contacts"* . . . . . . . . . . . . . . . . . . . . . . 18
            *a. Place where injury occurred* . . . . . . . . . . . . . . . . . 18
               *i. The § 146 "presumption."* . . . . . . . . . . . . . . 19
               *ii. Other interests of the "place of injury."* . . . . . 21
               *iii. Summary* . . . . . . . . . . . . . . . . . . . . . . . 23

| | | | |
|---|---|---|---|
| | *b.* | *Place where conduct causing the injury occurred* . . . . | 24 |
| | *c.* | *Place of domicile, residence, incorporation, or business* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 27 |
| | *d.* | *Place where the relationship was centered* . . . . . . . . | 28 |
| | *e.* | *Summary of pertinent "contacts"* . . . . . . . . . . . . . . | 29 |
| *6.* | *The § 6 "factors"* . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 30 |
| | *a.* | *Needs of the interstate and international systems* . . . . | 31 |
| | *b.* | *Relevant policies of the forum and other interested states* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 32 |
| | *c.* | *Ease of determination and application of the law* . . . . | 34 |
| | *d.* | *Other § 6(2) factors* . . . . . . . . . . . . . . . . . . . . . . . | 34 |
| *7.* | *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 36 |
| *B.* | *The Joneses' Motion For Leave To Amend Their Complaint* . . . . . . | 36 |
| *1.* | *Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . | 37 |
| *2.* | *Standards for leave to amend* . . . . . . . . . . . . . . . . . . . . | 37 |
| *3.* | *Application of the standards* . . . . . . . . . . . . . . . . . . . . | 38 |

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Although litigants often compete for the "home court advantage" in choice-of-law and choice-of-forum contests, this case turns the usual situation on its head: The defendants are rooting for application of the law of the state in which the plaintiffs were domiciled at the time of the tragic accident giving rise to their claims, while the plaintiffs are rooting, just as passionately, for application of the law of the principal defendant's home state. Under such circumstances, it comes as no surprise that the choice of law will have a significant impact upon this litigation. For example, issues that hang upon the choice of law in this case include the nature and amount of available damages,

should the plaintiffs succeed on their claims, and whether the plaintiffs should be allowed to amend their complaint to seek punitive damages.

## I. INTRODUCTION

### A. Procedural Background

Plaintiffs Timothy Jones and Jennifer Jones filed their Complaint (docket no. 2) in the present lawsuit on July 13, 2005, as the parents and next friends of Noah Timothy Jones, deceased. In their Complaint, the Joneses assert claims arising from Noah's death on August 14, 2003, when he suffered a fatal head injury during the retraction of a "slide out room" on a motor home or recreational vehicle (RV) rented by his grandparents. The Joneses named as defendants the manufacturer of the RV, Winnebago Industries, Inc. (Winnebago), an Iowa corporation with its principal place of business in Forest City, Hancock County, Iowa; the designer and manufacturer of various systems used in the "slide out room" on the RV, Kwikee Products Company, Inc. (Kwikee), a Washington corporation with its principal place of business in Oregon;[1] and the company that rented the RV to the grandparents, Nolan's RV & Marine, Inc. (Nolan's), a Colorado corporation with its principal place of business in Colorado. More specifically, the Joneses asserted design defect and inadequate warnings claims against both Winnebago and Kwikee; a manufacturing defect claim against Kwikee; and a claim of lack of reasonable care and failure to warn against Nolan's. The Joneses prayed for unspecified damages, attorney fees, costs, interest, and such other relief as the court deems just and proper.

---

[1]The Joneses alleged that, shortly after the accident in question, Kwikee was acquired by Actuant Corporation. However, Actuant filed an Answer (docket no. 14) on August 25, 2005, denying that it had ever acquired Kwikee. Actuant was subsequently dismissed from this lawsuit by stipulation of the parties on May 3, 2006 (docket no. 46).

Winnebago filed its Answer (docket no. 10) to the Joneses' Complaint on August 5, 2005, denying the claims against it and asserting various affirmative defenses. Kwikee filed a separate Answer (docket no. 16) on September 15, 2005, likewise denying the Joneses' claims and asserting essentially the same affirmative defenses as Winnebago. Nolan's filed a separate Answer (docket no. 17) on October 28, 2005, but Nolan's was subsequently dismissed from the case by stipulation of the parties on June 13, 2006 (docket no. 59).[2] On February 2, 2006, Winnebago filed a Third-Party Complaint (docket no. 29) naming Daniel Shoemaker and Julie Shoemaker, Noah's grandparents, as third-party defendants. The Shoemakers responded by filing a pre-answer motion to dismiss (docket no. 53) on May 30, 2006, challenging the court's personal jurisdiction over them. Eventually, the parties stipulated to the dismissal of the Shoemakers from this action. *See* Stipulations of Dismissal (docket nos. 60 & 63).

Winnebago and Kwikee were both granted leave to file amended answers on February 6, 2006, alleging that Idaho law applies to the substantive liability and damages issues in this case. *See* Order (docket no. 32); Kwikee's Amended Answer (docket no. 33); Winnebago's Amended Answer (docket no. 34). Thereafter, on May 23, 2006, Winnebago filed the Motion For Partial Summary Judgment (docket no. 50) now before the court seeking a ruling that Idaho law applies to this case. Kwikee filed a Joinder in [Winnebago's] Motion For Partial Summary Judgment (docket no. 51) on May 25, 2006. The Joneses filed their Resistance (docket no. 64) to the defendants' motion on June 26, 2006, asserting that the facts and circumstances of this action demand application of Iowa law, not Idaho law. Winnebago and Kwikee filed a joint Reply (docket no. 66) in further

---

[2]Because Nolan's was dismissed from the lawsuit by stipulation of the parties, the court will not comment further upon the participation of Nolan's in the lawsuit.

support of application of Idaho law on July 3, 2006. The Joneses filed an Objection To Defendants' Reply Brief (docket no. 67) on July 3, 2006, asserting that the defendants' reply improperly raises new arguments. On July 10, 2006, the Joneses also filed a statement of "newly received evidence" (docket no. 68), which they contend is relevant to their resistance brief. No party requested oral arguments on the defendants' motion for partial summary judgment, so as of July 10, 2006, that motion was fully submitted.

In addition to the defendants' motion for partial summary judgment, however, the court also has before it the Joneses' August 11, 2006, Motion For Leave To Amend Their Complaint To Add A Claim For Punitive Damages Against Defendants Winnebago And Kwikee (docket no. 71). Winnebago and Kwikee filed a joint Resistance To Motion To Amend The Complaint (docket no. 72) on August 25, 2006, asserting that the amendment would be contrary to Idaho law, which the defendants assert requires a hearing at which the Joneses must establish a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages before the amendment could be allowed. The Joneses filed a Reply (docket no. 75) in further support of their motion for leave to amend their Complaint on August 30, 2006, asserting that the availability of punitive damages is yet another reason why Iowa law should apply to their claims. Thus, it appears that the issues presented in the Joneses' motion to amend are intertwined with the issues presented in the defendants' motion for partial summary judgment concerning the applicable law. The Joneses' Motion For Leave To Amend Their Complaint, like the defendants' Motion For Summary Judgment on the choice-of-law issue, is now fully submitted.

### B. Factual Background

Ordinarily, in a ruling on a motion for summary judgment, the court would not attempt a detailed dissertation of the undisputed and disputed facts in the case. Rather, the court would provide sufficient facts, both undisputed and disputed, to put in context the parties' arguments for and against summary judgment. Such a course seems all the more appropriate here, where, notwithstanding the Joneses' contrary contentions, the issue of the appropriate choice of law is a question of law for the court. *See, e.g., Waterfowl Ltd. Liability Co. v. United States*, 453 F.3d 291, 297 (5th Cir. 2006) (recognizing that the court would "review questions of law, including choice of law and contract interpretation, *de novo*"); *Rationis Enters, Inc., of Panama v. Hyundai Mipo Dockyard Co., Ltd.*, 426 F.3d 580, 585 (2d Cir. 2005) (holding that determinations concerning the appropriate choice of law were questions of law to be reviewed *de novo*); *Robeson Indus. Corp. v. Hartford Acc. & Indem. Co.*, 178 F.3d 160, 164-65 (3d Cir. 1999) ("Choice-of-law is a question of law which this court reviews de novo."). Although the Joneses assert that "there are a huge number of material facts in controversy, which in itself is sufficient to deny any motion for summary judgment," Plaintiffs' Brief In Resistance To Winnebago's Motion For Partial Summary Judgment (docket no. 64), 2, the court finds that relatively few of the "huge number" of factual disputes asserted by the Joneses are material to the choice-of-law issue, even if the choice of law is not a question of law for the court. Thus, the statement of pertinent facts here is relatively brief.

The parties do not dispute that Noah Timothy Jones, who was two years old at the time of his death, was tragically killed on August 14, 2003, when he was crushed during the retraction of a "slide out" room on an RV, which had been rented by his grandparents, and which was then parked in a campground in Hell's Gate State Park near Lewiston, Idaho. The RV in question was conceived, designed, engineered, tested, and built by

6

Winnebago, an Iowa corporation, at Winnebago's facility in Iowa, and was first distributed in Iowa. Winnebago contends that the "slide out" mechanism in the RV was manufactured by Kwikee, a Washington corporation with offices in Portland, Oregon, but the Joneses contend that Winnebago's own documents explain that the "slide out" system, identified as a "Digisync®" system, was built exclusively for Winnebago with the help of Winnebago engineers. Noah's grandparents, Daniel and Julie Shoemaker, who are Colorado residents, had rented the RV from a Colorado company (Nolan's) and were operating the retraction apparatus of the "slide out" at the time of the accident. Timothy Jones, Jennifer Jones, and Noah Jones were residing in Idaho at the time of the accident, but the Joneses contend that Timothy and Jennifer were both born and raised in Colorado and intended to return there after Jennifer finished her nursing degree at the College of Southern Idaho in Twin Falls, Idaho.

The parties also agree that the Joneses filed suit on July 13, 2005, in this case seeking damages arising from Noah's death, but while Winnebago characterizes the action as a "wrongful death" action, the Joneses assert that it is a "products liability" action pursuant to Iowa law, and more specifically, pursuant to the RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY as recognized by the Iowa Supreme Court. As such, the Joneses contend that the case implicates numerous issues beyond a simple "wrongful death" claim. Winnebago asserts that, under the circumstances presented here, the only relationship between Iowa and the claims asserted by the Joneses is that an Iowa corporation assembled the RV. The Joneses, however, counter that such a contention is, at best, disingenuous, because Winnebago's own documents, statements, disclosures, and discovery responses demonstrate far more connections to Iowa. Winnebago also asserts that it has pleaded in its Amended Answer that Idaho law should apply to the Joneses' claims, and the Joneses do not dispute that Winnebago has so pleaded, although they

dispute Winnebago's contention that Idaho law should apply, because they assert that Iowa law should apply.

Turning to the Joneses' further factual contentions, the Joneses assert that Kwikee's connection to this case is "directly linked" to Iowa, because, according to Winnebago's 2001 Annual Report, the Digisync® slideout system was "designed exclusively for [Winnebago] with the help of Winnebago Industries' engineers." Winnebago does not dispute the quoted statement, but does dispute the Joneses' characterization that the statement in the report "directly linked" Kwikee to Iowa. The Joneses also contend that any conduct of the Shoemakers at the campsite in Idaho that led to Noah's death took just seconds, while Winnebago's and Kwikee's conduct, which the Joneses contend was centered in Iowa and directly led to Noah's death, took more than three years. The defendants dispute these factual contentions as vague, conclusory, unsupported by evidence in the record produced by the Joneses, and immaterial.[3]

---

[3]The Joneses make various other factual assertions concerning where they were at the time of the accident, whether they ever operated the "slide out" room on the RV or otherwise contributed to their child's death, how the RV was designed, and what the foreseeable uses of the RV were, which the defendants dispute as immaterial. The court finds that these contentions might be relevant and material to the Joneses' claims, but are not material to the choice-of-law question now before the court. The Joneses also contend, citing no authority, that the choice of law is not a question of law, but one subject to factual disputes, and that, in any event, Iowa law should apply. These assertions concern legal conclusions for the court, not factual matters. Moreover, the Joneses' assertion that the choice of law is a fact question is contrary to authorities cited by the court, above, that the choice of law is a question of law for the court.

## II. LEGAL ANALYSIS

### A. Winnebago's Motion For Partial Summary Judgment

The first motion before the court is Winnebago's May 23, 2006, Motion For Partial Summary Judgment (docket no. 50), in which Winnebago seeks a judgment that Idaho law applies to the Joneses' claims. Kwikee joined in that motion on May 25, 2006 (docket no. 51). The Joneses resist the application of Idaho law and, instead, assert that Iowa law should apply.

### 1. Arguments of the parties

In support of its motion for summary judgment, Winnebago argues that the court must look to Iowa's choice-of-law rules to determine which state's law applies to the Joneses' claims. Under the "most significant relationship" test applied by Iowa courts to choice-of-law questions, Winnebago argues that the appropriate law to apply in this case is Idaho law. This is so, Winnebago argues, because the only relationship between Iowa and the claim is the fact that an Iowa corporation assembled the RV in question in Iowa. More specifically, considering the factors identified in RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145, Winnebago argues that the place where the injury occurred is, undisputedly, Idaho; that the conduct causing the injury was the improper operation of the "slide out" room, which occurred in Idaho; that only Winnebago, of all the parties, is a resident of Iowa, while the plaintiffs were residents of Idaho; and there is no particular location other than Idaho where the relationship between the parties is centered, because Idaho is where the injury occurred, where the Shoemakers were operating the RV, and where the Joneses reside. Furthermore, Winnebago argues that there is a true conflict between Iowa and Idaho law, so that a choice of law must be made. Winnebago points out that Idaho caps non-economic damages, but Iowa does not; that Idaho calculates damages for death differently than Iowa does, including damages for wrongful death and loss of

consortium; and that the grandparents can only be apportioned fault under Idaho law. Winnebago argues that, not only do these differences establish a true conflict between Idaho and Iowa law, they demonstrate that Idaho has an interest in application of its laws to a tort centered in Idaho involving Idaho residents.

In response, the Joneses assert, in essence, that Iowa, not Idaho, has the most significant relationship to the suit, because Iowa is the center of the parties' relationship, which involves a products liability claim, and the Iowa conduct in question, consisting of designing and manufacturing a defective product, lasted more than three years, while any conduct in Idaho that contributed to the claim lasted mere seconds. The Joneses contend that it is important to understand far greater factual detail about the product at the center of this products liability suit than Winnebago has suggested in order to assess the weight of the pertinent considerations. What is apparently critical about the product, in the Joneses' view, is that the "slide out" room is retracted by pushing a button on the inside of the RV, so that any conduct in Idaho that led to Noah's death took mere seconds, the time it took to push the button. The Joneses argue, next, that Winnebago's most important argument—that the grandparents, who pushed the button to retract the "slide out" room at the time of the accident, can only be apportioned fault under Idaho law—is now moot, because the grandparents are settling parties to whom fault can be apportioned under Iowa law, even if this court was never actually able to exercise personal jurisdiction over them.

The Joneses also argue that, considering the § 145 factors in light of the issue in tort, a products liability claim, it is apparent that Iowa has the most significant relationship to that claim. Specifically, they argue that the RV in question was designed, engineered, tested, manufactured, and initially distributed in Iowa by an Iowa company, so that the *conduct* giving rise to their products liability claim occurred in Iowa; that the place of Noah's death was merely fortuitous in this products liability case, not least because the

product in question was designed to go all over the world; that the parents' residence in Idaho should be discounted, because there is no suggestion that they were, in any way, at fault for Noah's death; and that the relationship that matters in this case is the relationship between Kwikee and Winnebago to develop the "slide out" room, and the center of that relationship was Iowa—indeed, in their submission of "newly discovered evidence," they assert that the contract between Winnebago and Kwikee states that Iowa law applies to their relationship. Similarly, the Joneses argue that the considerations identified in RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 also warrant the application of Iowa law. Specifically, they contend that Idaho simply has little interest in the outcome of this litigation, while Iowa has an interest in encouraging resident corporations to make safer products; that the justified expectation of Winnebago, an Iowa corporation, should have been that Iowa law would apply to a products liability suit against it, and that both Winnebago and Kwikee could have expected the application of Iowa law to a suit over a product designed exclusively for an Iowa corporation; and that Iowa has an interest in application of its products liability tort law, which it deliberately adopted, while Idaho has no comparable interest that could be offended.

In their joint reply, Winnebago and Kwikee argue damages are a matter of substantive law and that the Joneses are trying to "forum shop" their way out of the damages law of the forum in which they reside and the accident occurred. They also argue that the place of injury is not merely "fortuitous," because RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 146 creates a presumption for products liability cases that the law of the place of injury applies. Here, the defendants argue, there is nothing to rebut that presumption, because the Eighth Circuit Court of Appeals, in *Dorman v. Emerson Electric Co.*, 23 F.3d 1354 (8th Cir. 1994), rejected the argument that the place of injury is merely "fortuitous" in a products liability case and, instead, held that the place of injury bears a

strong relationship to the occurrence and the parties, and that to hold otherwise would render the presumption in § 146 meaningless in products liability cases. They also argue that, contrary to the Joneses' contentions, Idaho has at least as significant an interest in the application of its regulation and limitation of damages in products liability cases as Iowa has in application of its tort and damages law.

After regular briefing on the motion for partial summary judgment had closed, the Joneses made two further submissions: First, they objected to the assertion of the new arguments in the defendants' reply brief concerning a § 146 presumption; and second, they pointed to newly received evidence, consisting of the contract between Kwikee and Winnebago, which shows that those parties agreed that their relationship would be governed by Iowa law. The defendants have not responded to either of these further submissions.

### 2. *Standards for summary judgment*

The parties' arguments must be evaluated, first, in light of the standards applicable to summary judgment. Rule 56 of the Federal Rules of Civil Procedure provides that a defending party may, at any time, move for summary judgment in that party's favor "as to all or any part" of the claims against that party. *Fed. R. Civ. P.* 56(b). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(c). Moreover, "where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996) (quoting *Crain v. Bd. of Police Comm'rs*, 920 F.2d 1402, 1405-06 (8th Cir. 1990)). Consequently, summary judgment may be "particularly appropriate" here, because as explained above—and

contrary to the Joneses' contention—the issue of the appropriate choice of law is a question of law for the court. *See, e.g., Waterfowl Ltd. Liability Co.*, 453 F.3d at 297 (recognizing that the court would "review questions of law, including choice of law and contract interpretation, *de novo*"); *Rationis Enters, Inc., of Panama*, 426 F.3d at 585 (holding that determinations concerning the appropriate choice of law were questions of law to be reviewed *de novo*); *Robeson Indus. Corp.*, 178 F.3d at 164-65 ("Choice-of-law is a question of law which this court reviews de novo.").

On the other hand, where the appropriateness of summary judgment is dependent upon whether or not there are genuine issues of material fact, procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1107 (8th Cir. 1998); *Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir. 1993). When a moving party has carried its burden under Rule 56(c), the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir. 1995); *Beyerbach v. Sears*, 49 F.3d 1324, 1325 (8th Cir. 1995). An issue of material fact is "genuine" if it has a real basis in the record. *Hartnagel*, 953 F.2d at 394 (citing *Matsushita Elec. Indus.*, 475 U.S. at 586-87). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," *i.e.*, are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986); *Beyerbach*, 49 F.3d at 1326; *Hartnagel*, 953 F.2d at 394. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to a judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323; *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir. 1997). Ultimately, the necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994).

The court will apply these standards to the defendants' motion for partial summary judgment seeking a determination that Idaho law applies to the plaintiffs' products liability claims.

### 3.    Is there a "true conflict" of laws?

Before applying any choice-of-law rules, this court must determine whether or not there is a "true conflict" between the laws of the nominee states, because if there is no such "true conflict," then no choice of law is required. *See Modern Equip. Co. v. Continental Western Ins. Co., Inc.*, 355 F.3d 1125, 1128 n.7 (8th Cir. 2004) ( "If there is not a true conflict between the laws of Nebraska and Iowa on the pertinent issue, then no choice-of-law is required. *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 736 (8th Cir. 1995)."); *Counsul General of Republic of Indonesia v. Bill's Rentals, Inc.*, 330 F.3d 1041, 1045 (8th Cir. 2003) ("Before considering any issues of conflict of laws, we must first determine whether "'there actually is a difference between the relevant laws of the different states.'" *Phillips v. Marist Soc'y of Washington Province*, 80 F.3d 274, 276 (8th Cir. 1996) (quoting *Barron v. Ford Motor Co. of Canada, Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992))."); *Phillips v. Marist Soc'y*, 80 F.3d 274, 276 (8th Cir. 1996) ("[B]efore

14

entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states."); *Harlan Feeders, Inc. v. Grand Labs., Inc.*, 881 F. Supp. 1400, 1405 (N.D. Iowa 1995) (noting that there must be a "true conflict" between the laws of the possible jurisdictions on the pertinent issue before any choice of law need be made). In this case, Winnebago has asserted that several "true conflicts" exist between Idaho law and Iowa law. Specifically, Winnebago asserts that Idaho caps non-economic damages at $250,000, pursuant to IDAHO CODE § 6-1603, while Iowa does not; that Idaho and Iowa calculate death damages differently, citing IDAHO CODE § 5-311; and that Idaho law allows comparison of the grandparents' fault, but Iowa law does not, comparing IDAHO CODE § 6-802 with IOWA CODE § 668.3(2)(b). The Joneses have not disputed Winnebago's contention that the laws of the two states are in "true conflict," and the court agrees. Therefore, the court will pass on to the question of what state's law should apply.

### 4. *Choice-of-law rules*

The court agrees with the parties that, in a diversity action such as this, to determine what state's law applies to the plaintiffs' claims, the court must use the choice-of-law rules of the forum state, in this case, Iowa. *See, e.g., Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (the conflict-of-laws rules to be applied by a federal court are the rules of the forum state, because "[o]therwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side"); *Allianz Ins. Co. of Canada v. Sanftleben*, 454 F.3d 853, 855 (8th Cir. 2006) ("In a diversity case, a district court sitting in Minnesota applies Minnesota's choice-of-law rules."); *Larken, Inc. v. Wray*, 189 F.3d 729, 732-33 (8th Cir. 1999) ("A federal court must apply the choice of law rules of the forum state—in this case, Iowa."). The court, therefore, turns to consideration of Iowa's conflict-of-laws rules.

As the Iowa Supreme Court explained a decade ago,

> Iowa has abandoned the *lex loci delicti* rule in which the law of the place of injury governs every issue in a tort action. We now follow the Restatement [(Second) of Conflict of Laws]'s "most significant relationship" methodology for choice of law issues. *Cameron v. Hardisty*, 407 N.W.2d 595, 597 (Iowa 1987); *Berghammer v. Smith*, 185 N.W.2d 226, 231 (Iowa 1971). The theory behind this approach is that rather than focusing on a single factor, "the court of the forum should apply the policy of the state with the most interest in the litigants and the outcome of the litigation." *Fuerste v. Bemis*, 156 N.W.2d 831, 834 (Iowa 1968).

*Veasley v. CRST Int'l, Inc.*, 553 N.W.2d 896, 897 (Iowa 1996). More specifically still, the court explained that, for a tort case, such as the one now before this court,[4]

> The most significant relationship test is that which is stated as follows in the Restatement (Second) Conflict of Laws:
>
> > (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has

---

[4] This court has repeatedly recognized that the "most significant relationship" test varies depending upon whether the claim at issue sounds in contract or tort. *See, e.g., Sioux Biochem., Inc. v. Cargill, Inc.*, 410 F. Supp. 2d 785, 799 (N.D. Iowa 2005); *Webster Indus., Inc. v. Northwood Doors, Inc.*, 320 F. Supp. 2d 821, 831 n.3 (N.D. Iowa 2004); *L & L Builders Co. v. Mayer Assoc. Servs., Inc.*, 46 F. Supp. 2d 875, 881 (N.D. Iowa 1999); *Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.*, 23 F. Supp. 2d 974, 1002 (N.D. Iowa 1998); *Harlan Feeders, Inc. v. Grand Labs., Inc.*, 881 F. Supp. 1400, 1405 (N.D. Iowa 1995). While Iowa courts apply RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 188 to contract claims, they apply RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 145(2) to tort claims. *Dethmers*, 23 F. Supp. 2d at 1002 (contract) & 1004 (tort). In this case, where only tort claims are at issue, the "most significant relationship" test is set forth in § 145(2), as stated in the quotation from *Veasley*, above.

the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) Conflict of Laws § 145 (1971).

We recognized in *Joseph L. Wilmotte & Co. v. Rosenman Brothers*, 258 N.W.2d 317, 326 (Iowa 1977), that the situation-specific sections of the Restatement, such as section 145, incorporate the provisions set forth in section 6 thereof. These principles are as follows:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) Where there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability, and uniformity of result, and

(g) ease in the determination and application of
the rule to be applied.

Restatement (Second) Conflict of Laws § 6 (1971).

*Veasley*, 553 N.W.2d at 897-98. As § 145 states, the "contacts" listed in § 145(2) "are to be evaluated according to their relative importance with respect to the particular issue." RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 145(2). Thus, the court will determine the relative importance of the various § 145(2) "contacts," as well as whether those "contacts" weigh in favor of application of Idaho or Iowa law, then consider the § 6 "factors" in light of the pertinent "contacts."

### 5.      The § 145(2) "contacts"

#### a.      Place where injury occurred

Iowa courts have recognized that, among the § 145(2) "contacts," the "place where the injury occurred"—here, Idaho—has little importance, at least where the state that is the place of injury has no other interest in the case. *Cameron*, 407 N.W.2d at 597. Moreover, in *Harlan Feeders*, this court noted that rejection of the "place of injury" as a determinative factor was in keeping with the Iowa courts' rejection of the longstanding rule of *lex loci delecti*. *Harlan Feeders, Inc.*, 881 F.3d at 1409 (citing *Zeman v. Canton State Bank*, 211 N.W.2d 346, 348 (Iowa 1973)). Because the "place of injury" in this case is Idaho, however, and Winnebago favors application of Idaho law, Winnebago argues strenuously for the re-elevation of "place of injury" to preeminent importance. Winnebago's argument is twofold: (1) Section 146 of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS creates a rebuttable presumption that the law of the "place of injury" should apply; and (2) this is not a case in which the state that is the "place of injury" has no other interest in the case, so that the "place of injury" should not be disregarded. The court will consider these arguments in turn.

18

### i. The § 146 "presumption." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 146 provides as follows:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 146. Comment *a* to this section explains that "[t]he rule of this Section applies to personal injuries that are caused either intentionally or negligently and to injuries for which the actor is responsible on the basis of strict liability." *Id.*, cmt. *a.* Here, the Joneses do assert personal injury claims that are apparently based on both negligence and strict liability; thus, this provision appears to be applicable. Moreover, Winnebago is correct that this provision "presumes that the law of the state where the injury occurred determines the rights and liabilities of the parties 'unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties.'" *In re Derailment Cases*, 416 F.3d 787, 794-95 (8th Cir. 2005) (quoting § 146 and noting that this provision had been adopted by Nebraska "to determine which state's law applies to a personal injury claim"); *Scheerer v. Hardee's Food Sys., Inc.*, 92 F.3d 702, 708 (8th Cir. 1996) (noting the same presumption in § 146, applying Missouri law); *Horn v. B.A.S.S.*, 92 F.3d 609, 611 (8th Cir. 1996) (noting the same presumption in § 146, applying Missouri law); *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir. 1994) (applying Missouri law, and noting that § 146 "essentially establishes a presumption that the state with the most significant relationship is the state where the injury occurred, absent an overriding interest of another state based on the factors articulated in section 6").

19

Nevertheless, the fact that § 146 establishes such a "presumption" really adds nothing to the analysis here. First, the Iowa Supreme Court has *never* expressly adopted § 146. Instead, the Iowa Supreme Court has formulated the applicable test for tort cases as the "most significant relationship" test set forth in §§ 6 and 145 of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS. *See Veasley*, 553 N.W.2d at 897-98 (stating the "most significant relationship" test for tort cases in terms of §§ 6 and 145); *and compare In re Derailment Cases*, 416 F.3d at 794 ("Nebraska has adopted the Restatement (Second) of Conflict of Laws § 146 to determine which state's law applies to a personal injury claim."); *Dorman*, 23 F.3d at 1358 (noting that, under Missouri law, § 146 "establishes the precise rule with respect to conflicts issues arising out of personal injury actions"). Second, reinstatement of a presumption that the "place of injury" provides the applicable law in a conflict-of-laws situation for a personal injury case appears contrary to the Iowa courts' express abandonment of the *lex loci delicti* rule as the governing rule for every issue in a tort action. *See Veasley*, 553 N.W.2d at 897 (noting abandonment of the *lex loci delicti* rule); *Harlan Feeders, Inc.*, 881 F.3d at 1409 (noting that rejection of "place of injury" as a determinative factor was in keeping with the Iowa courts' abandonment of the longstanding rule of *lex loci delicti*) (citing *Zeman*, 211 N.W.2d at 348). Indeed, express abandonment of the *lex loci delicti* rule sets Iowa conflict-of-laws rules apart from the Missouri rules that were applied in *Dorman*, upon which the defendants here rely, because as the Eighth Circuit Court of Appeals noted, under Missouri law, "where it is difficult to see clearly that a particular state has the most significant relationship to an issue, the trial court should apply the *lex loci delicti* rule." *Dorman*, 23 F.3d at 1359. Thus, *lex loci delicti* may be the "default rule" in Missouri, but it is not in Iowa. Consequently, decisions applying a *lex loci delicti* rule are of little persuasive value here. Finally, and probably most importantly, determination of whether or not the "presumption" established

by § 146 has been overridden takes into account the factors stated in § 6 and the contacts listed in § 145, *see* Restatement (Second) of Conflict of Laws § 146 (creating a presumption that the law of the place of injury applies, "unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties"); *Dorman*, 23 F.3d at 1358 (under Missouri law, "[i]n ascertaining whether such an overriding interest exists, the section 6 factors must be evaluated taking into account the contacts listed in section 145 according to their relative importance to the particular issue," citing *Kennedy v. Dixon*, 439 N.W.2d 173, 181 (Mo. 1969) (*en banc*)), so that determination of whether the § 146 "presumption" should stand simply leads back to determination of which state has "the most significant relationship" pursuant to § 145 and § 6.

   *ii.*   ***Other interests of the "place of injury."*** Winnebago also argues that this is not a case in which the state that is the "place of injury" has no other interest in the case, so that the circumstances under which Iowa court's disregard the "place of injury" are not present here. *See Cameron*, 407 N.W.2d at 597 (the "place where the injury occurred" has little importance, at least where the state that is the place of injury has no other interest in the case). More specifically, Winnebago asserts that this is not just a "fly over" case, or a case of merely "fortuitous" presence in the "place of injury," in which the state that is the "place of injury" was just a state over or through which the injured party was traveling on the way to or from his goal or home state. *See, e.g.,* Restatement (Second) of Conflict of Laws § 146, cmt. *e*; *id.* at 145, cmt. *e*; *Dorman*, 23 F.3d at 1360. Instead, Winnebago points out that the "place of injury" here was also the state in which Noah and his parents were then residing, so that the interest of that state is more significant.

In support of these contentions, Winnebago again relies primarily on the decision of the Eighth Circuit Court of Appeals in *Dorman*, 23 F.3d at 1359-60. In *Dorman*, the Eighth Circuit Court of Appeals, applying Missouri choice-of-law rules, rejected the plaintiff's contention that Missouri law, rather than Canadian law, should apply to claims of negligent and defective design of a saw, where the plaintiff, who was domiciled in Canada, purchased and used the saw and was injured by the saw in Canada, but the saw was designed and design-tested in Missouri and sold by a Missouri company, although it was actually manufactured in Taiwan. *Dorman*, 23 F.3d at 1359-61. The court determined that the plaintiff's place of injury bore a strong relationship to the occurrence and the parties, because it was the place where the plaintiff purchased and used the saw and where he was injured. *Id.* at 1360. The court in *Dorman* also expressed doubt that the Missouri courts would follow a decision upon which the plaintiff relied—a decision in *Kozoway v. Massey-Ferguson, Inc.*, 722 F. Supp. 641 (D. Colo. 1989), which had held that the occurrence of an injury from a product in Canada was merely fortuitous, where all of the allegedly wrongful conduct, consisting of manufacture of a defective product, took place in Iowa—because that decision was a decision of a federal trial court in Colorado applying Colorado choice-of-law principles. *Id.* at 1360. Thus, *Dorman* does support Winnebago's contention that, at least under Missouri law, the place of injury bears a strong relationship to the occurrence and the parties, where the place of injury is also the domicile of the plaintiff and the place where the plaintiff purchased and used the allegedly defective product.

Of course, *Dorman* is not controlling here, because the court in *Dorman* was applying Missouri conflict-of-laws rules, and the case now before this court involves Iowa conflict-of-laws rules. To the extent that *Dorman* is nevertheless instructive, what it teaches is that the place of injury becomes more significant to the conflict-of-laws analysis

*when it is something more than the place of injury*, *i.e.*, when there is some other basis for that state to have an interest in the litigation. *See id*. at 1360 (under Missouri law, the plaintiff's place of injury bore a strong relationship to the occurrence and the parties, because it was also the place where the plaintiff was domiciled, where he purchased and used the saw, and where he was injured); *cf. Cameron*, 407 N.W.2d at 597 (the "place where the injury occurred" has little importance, at least where the state that is the place of injury has no other interest in the case). *Dorman* certainly does *not* stand for the proposition that the place of injury, standing alone, is of particular significance to the conflict-of-laws analysis *under Iowa law*.

    *iii.*     *Summary*. In short, although "place of injury" is certainly a factor in the conflict-of-laws analysis under Iowa law, pursuant to Iowa's recognition of RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6 and 145 as stating the applicable "most significant relationship" test, there is no presumption that the law of the "place of injury" should apply pursuant to RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 146. Iowa has never recognized § 146 or its presumption, even in products liability or other personal injury cases, and indeed, has expressly abandoned the *lex loci delicti* rule embodied in § 146. Because the court cannot determine the appropriate choice of law based solely on the "place of injury," the court must consider, on the basis of other "contacts," whether Idaho has an interest based on anything more than being the "place of injury." *See Cameron*, 407 N.W.2d at 597 (the "place where the injury occurred" has little importance, at least where the state that is the place of injury has no other interest in the case); *cf. Dorman*, 23 F.3d at 1360 (applying Missouri law, the court considered whether the plaintiff's place of injury bore a strong relationship to the occurrence and the parties based on other § 145(2) contacts).

### b.       *Place where conduct causing the injury occurred*

Turning to the next § 145(2) "contact," the parties are sharply divided over which state is the "place where conduct causing the injury occurred." *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(b). Winnebago contends that "the place where the conduct causing the injury occurred" was Idaho, where the grandparents activated the retraction mechanism on the "slide out" room on the RV, causing Noah to suffer his fatal injuries. The Joneses, on the other hand, contend that "the place where the conduct causing the injury occurred," in this products liability case, is Iowa, where Winnebago (and Kwikee) collaborated to conceive, design, engineer, test, build, and first distribute the "slide out" room.

Winnebago again relies on *Dorman* as discounting the place of design and manufacture as "the place where the conduct causing injury occurred" in a products liability case, or as the place with "the most significant relationship" to a products liability case. In *Dorman*, the Eighth Circuit Court of Appeals, applying Missouri conflict-of-laws rules, did find that the plaintiff had placed "exaggerated emphasis" on the place where the allegedly negligently and defectively designed product was designed and design-tested as "the place where the conduct causing the injury occurred." *Dorman*, 23 F.3d at 1359. In *Dorman*, the court found that the fact that the product was designed in Missouri was "not without significance to the choice-of-law analysis," but was not enough, without more, to overcome the § 146 presumption in favor of application of the law of the place where injury occurred. *Id.* The court also reasoned that, to accept such an argument "would render the section 146 presumption meaningless in virtually every products liability case, even though section 146 is devoid of language that would suggest an intent to exclude products liability cases from the scope of the presumption." *Id.*

Again, this court finds that *Dorman* is certainly not controlling, and of little persuasive weight, because *Dorman* was applying Missouri conflict-of-laws rules, which expressly recognized § 146, not Iowa rules, which have not, so far, recognized § 146. Moreover, *Dorman* used the *lex loci delicti* rule as the "default" rule under Missouri law "where it is difficult to see clearly that a particular state has the most significant relationship to an issue," *Dorman*, 23 F.3d at at 1359, but Iowa has expressly abandoned the *lex loci delicti* rule. *Veasley*, 553 N.W.2d at 897. In contrast, other courts—apparently not burdened with a *lex loci delicti* rule or the § 146 presumption—have recognized in products liability cases that the place where the allegedly defective product was designed, marketed, or manufactured is "the place where the conduct causing the injury occurred," and have given significant weight to that factor in the conflict-of-laws calculus. *See, e.g., McLennan v. American Eurocopter Corp., Inc.*, 245 F.3d 403, 426 (5th Cir. 2001) (Texas had the most significant relationship to a products liability claim, even though the plaintiff was injured in Canada, in part because Texas was the place where the conduct giving rise to his injuries occurred, where Texas was the place where the helicopter was marketed and manufactured, and where the service bulletins and records concerning the operation of the aircraft were sent and maintained); *MacDonald v. General Motors Corp.*, 110 F.3d 337, 342 (6th Cir. 1997) (the "place of conduct causing injury" was Tennessee, the sight of the accident, and Michigan, the state where the defendant designed the allegedly defective van). This court, likewise, concludes that, in a products liability case such as this, in which the plaintiffs allege defective design, defective manufacture, or defective warnings, the conduct causing injury is, at least primarily, the design, manufacture, and marketing of the allegedly defective product. In this case, the place in which that conduct occurred is Iowa.

Moreover, in a products liability case, the place where the design, manufacture, and marketing conduct relating to the allegedly defective product occurred is of relatively greater weight than "the place of injury," at least in the absence of evidence that other conduct substantially contributing to the injury also occurred in the place of injury. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2) (the § 145(2) contacts "are to be evaluated according to their relative importance with respect to the particular issue"); *see also id.*, cmt *e* ("When . . . the place of injury cannot be ascertained or is fortuitous and, with respect to the particular issue, bears little relation to the occurrence and the parties, the place where the defendant's conduct occurred will usually be given particular weight in determining the state of the applicable law."). There is some merit to Winnebago's contention that the grandparents' conduct in operating the "slide out" room was also conduct causing the injury and that their conduct occurred in Idaho. *See, e.g., MacDonald*, 110 F.3d at 342 (the "place of conduct causing injury" was Tennessee, the sight of the accident, and Michigan, the state where the defendant designed the allegedly defective van). However, the grandparents' conduct merely "fortuitously" occurred in Idaho. *Cf. id.* (discounting the place where the injury and one party's conduct occurred as merely "fortuitous"). The grandparents were merely visiting Idaho, and their trip was to begin and end in Colorado, where they resided and where they had rented the RV, so that the accident could have occurred in some state other than Idaho. *Cf.* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145, cmt. *e*, Illustration 1 (it could be deemed "fortuitous" that the accident occurred in one state rather than some other state, where the trip began and was to end in another state). Thus, even without weighing the relative contribution of the grandparents' and Winnebago's conduct to the tragic accident, which both the Joneses and Winnebago invite the court to do, the place where Winnebago's conduct occurred is more significant, because that place was not merely "fortuitous."

Therefore, the "contact" identified in § 145(2)(b) as the "place where the conduct causing injury occurred" suggests that Iowa has the greater interest in application of its law to this case.

### c.    *Place of domicile, residence, incorporation, or business*

The third § 145(2) "contact" is "the domicile, residence, nationality, place of incorporation, and place of business of the parties." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(c). There is clearly a split here between Idaho as the Joneses' residence at the time of the tragic accident, and Iowa as the place where Winnebago is incorporated and does business. As Comment *e* to § 145 explains,

> In the case of other torts [*i.e.*, other than reputation, financial, or privacy torts], the importance of [the § 145(2)(c)] contacts depends largely upon the extent to which they are grouped with other contacts. The fact, for example, that one of the parties is domiciled or does business in a given state will usually carry little weight of itself. On the other hand, the fact that the domicil and place of business of all parties are grouped in a single state is an important factor to be considered in determining the state of the applicable law. The state where these contacts are grouped is particularly likely to be the state of the applicable law if either the defendant's conduct or the plaintiff's injury occurred there. This state may also be the state of the applicable law when conduct and injury occurred in a place that is fortuitous and bears little relation to the occurrence and the parties (see § 146, Comments d-e).

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145, cmt. *e*. Here, the Joneses' residence in Idaho does "group" with the "place of injury" and the place where the grandparents' "conduct causing injury occurred." On the other hand, the "place of injury" and the place where the grandparents' "conduct causing injury occurred" are still only "fortuitous," and only fortuitously "grouped" with other contacts, where the Joneses, the

Idaho residents, did not purchase the RV or operate the "slide out" on the RV at the time of the accident. *Compare Dorman*, 23 F.3d at 1359 (finding the plaintiff's domicile in Canada was significant when Canada was also the place of injury and the place where the plaintiff purchased and used the allegedly defective product). On the other hand, the "grouping" of Winnebago's place of business and place of its conduct allegedly causing injury is by no means "fortuitous." Instead, it this "grouping" of Winnebago's place of business with other "contacts" that warrants giving more weight to Winnebago's place of business, Iowa, than to the Joneses' place of residence, Idaho.

Therefore, the § 145(2)(c) "contacts" weigh in favor of Iowa.

### d.    *Place where the relationship was centered*

The final § 145(2) "contact" is "the place where the relationship, if any, between the parties is centered." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(d). Winnebago argues that the place where the relationship among all of the parties was centered is Idaho, because that is where the allegedly defective product and the injured parties came together. The Joneses, on the other hand, argue that the relationship that matters in this products liability case is the collaboration between Winnebago and Kwikee, the parties responsible for the design, manufacture, and marketing of the allegedly defective "slide out" room. The center of that relationship, they contend, was Iowa, as demonstrated conclusively by the contract between those parties, which states that Iowa law applies to their relationship.

While the Joneses' contention has some appeal, comment *e* to RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 suggests that it is the relationship *between the plaintiff and the defendant* that matters, not the relationships between or among other parties. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145, cmt. *e* ("When there is a relationship *between the plaintiff and the defendant* and when the injury was caused

by an act done in the course of the relationship, the place where the relationship is centered is another contact to be considered.") (emphasis added). On the other hand, contrary to Winnebago's contention, there is little basis to find that there was *any* "relationship" between the plaintiffs and either of the defendants or that the injury was caused by an act done in the course of such a relationship, where the plaintiffs and the defendants had no contractual or other relationship, and the combination of the plaintiffs with the defendants leading to the tragic accident was merely "fortuitous." The RESTATEMENT expressly contemplates that there may be no "place where the relationship is centered." *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(d) (a pertinent contact is "the place where the relationship, *if any*, between the parties is centered") (emphasis added); *see id.*, cmt. *e* (considering the place where the relationship between the parties is centered "[w]hen there is a relationship between the plaintiff and the defendant"). Thus, the court concludes that the "place where the relationship is centered" is not a relevant "contact" here, because there simply was no "relationship" between the plaintiffs and the defendants, apart from the fortuity of the accident.

> *e.* **Summary of pertinent "contacts"**

The foregoing analysis shows that this case involves the following § 145(2) "contacts": The "place of injury" is Idaho, but that "contact" is of slight rather than "presumptive" importance; the "place where the conduct causing the injury occurred" is both Idaho and Iowa, but Idaho is merely fortuitously the place where the grandparents' conduct causing injury occurred, while Iowa is strongly connected to Winnebago's conduct causing injury; the Joneses' residence in Idaho can only be "grouped" with other contacts that are merely fortuitous, so that Winnebago's place of business and place in which its conduct allegedly causing injury occurred, Iowa, is of considerably greater weight; and there is no place where the relationship between the Joneses and Winnebago is centered.

Thus, based on the § 145(2) "contacts," Iowa has the dominant interest of the nominee states.

### 6.     The § 6 "factors"

Evaluation of the § 145(2) "contacts" is not the end of the conflict-of-laws analysis, however, because as § 145(1) makes clear, the question is which state "has the most significant relationship to the occurrence and the parties under the principles stated in § 6," *see* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1), and also makes clear that the § 145(2) "contacts" are merely the "[c]ontacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue. . . ." *Id.* at § 145(2); *accord Veasley*, 553 N.W.2d at 898 ("[T]he situation-specific sections of the Restatement, such as section 145, incorporate the provisions set forth in section 6 thereof."). Therefore, the court must now consider the § 6 "principles," at least to the extent that the court finds that they are implicated here, in light of the pertinent § 145(2) "contacts."

The Comments to § 145 explain that "[t]he factors in Subsection (2) of the rule of § 6 vary somewhat in importance from field to field." *Id.*, cmt. *b.* More specifically, the Comments explain that the § 6 factors of relatively greater importance for a tort action are "the needs of the interstate and international systems [§ 6(2)(a)], the relevant policies of the forum [§ 6(2)(b)], the relevant policies of other interested states [§ 6(2)(c)] and particularly of the state with the dominant interest in the determination of the particular issue, and the ease in the determination and application of the law to be applied [§ 6(2)(g)]." *Id.*; *cf. Veasley*, 553 N.W.2d at 898 (also discounting, in an automobile accident case, the importance of the factors in § 6(2)(d) and (f), but finding that the factor in (g) was "of little importance" in such a case, because the defendant would either be held liable or it would not, without any "esoteric or complex substantive laws . . . involved"). The court will consider these relatively more important factors in turn.

### a. Needs of the interstate and international systems

The Comments to § 6 concerning "the needs of the interstate and international systems," the factor identified in § 6(2)(a), provide little insight, because they are concerned with *what choice-of-law rules* further the needs of the interstate and international systems, rather than with *what forum's substantive law* furthers the needs of the interstate and international systems. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6, cmt. *d.* What is more helpful is the observation of the Iowa Supreme Court in *Veasley v. CRST Int'l, Inc.*, that "[r]espect for interstate and international systems is maintained when the forum state, when choosing to apply its own law, has a 'substantive connection' with the issue." 553 N.W.2d 896, 899 (Iowa 1996) (quoting *Milkovich v. Saari*, 203 N.W.2d 408, 417 (Minn. 1973)). Focusing on whether or not there was such a "substantive connection," the Iowa Supreme Court concluded in *Veasley* that Iowa's owner's liability law, which was at issue in that case, "is not so abnormal that an application of Iowa law would greatly disrupt interstate order." *Id.* Similarly, here, based on consideration of the § 145(2) "contacts" above, which reveal that Iowa is the state with the "dominant" interest, Iowa has an appropriate "substantive connection" with the products liability and other tort issues (such as damages and comparative fault) involved in this case so that "[r]espect for interstate and international systems is maintained" by choosing Iowa law as the applicable law. *Id.* Moreover, Iowa's products liability, comparative fault, and damages laws are "not so abnormal that an application of Iowa law would greatly disrupt interstate order" in this case, either. *Cf. id.* Therefore, this factor supports the application of Iowa law.

### b.     *Relevant policies of the forum and other interested states*

The second and third relatively more important § 6 factors in a tort case are "the relevant policies of the forum," RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2)(b), and "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue," *id*. at § 6(2)(c), respectively. *Id*. § 145, cmt. *b* (identifying these factors as ones of relatively greater importance in a tort case); *cf*. *Veasley*, 553 N.W.2d at 898 (also discounting, in an automobile accident case, the importance of other § 6(2) factors). The Comments to § 145 indicate that what is of particular concern with regard to the § 6(2)(c) factor is the policies of "the state with the dominant interest in the determination of the particular issue." *Id*. at § 145, cmt. *b*. Thus, these two factors should logically be considered together here, where Iowa is both the forum state and the state that this court has determined has the dominant interest in the issues in this case, based on the § 145(2) "contacts."

With precious little authority, the parties offer widely different assertions of the polices behind the general tort and products liability laws of the two nominee states, Iowa and Idaho, as well as assertions about which state's interests are, consequently, most implicated. The Iowa Court of Appeals, however, provided rather more concrete guidance when it observed that the rationale for restitution under criminal law and the rationale for tort under civil law are similar: "A wrong has been done. A person has been injured or property damaged. The victim deserves to be fully compensated for the injury by the actor who caused it." *State v. Ihde*, 532 N.W.2d 827, 829 (Iowa Ct. App. 1995); *see also Hartley State Bank v. McCorkell*, 91 Iowa 660, 60 N.W. 197, 199 (1894) (noting that, where the plaintiff's action sounded in tort, rather than contract, "the purpose of the law is to fully compensate him for all that he lost by the wrongful act"). Thus, the policy goal of Iowa tort law appears to be to "fully compensate" tort victims. Such a policy goal

would be thwarted by application of Idaho law, which imposes caps on damages available to tort victims. Therefore, where the court has determined, based on the § 145(2) "contacts," that Iowa's interest is "dominant," the § 6 "factors" requiring consideration and comparison of the policies and relative interests of the nominee states also weigh in favor of application of Iowa law in this case.

The defendants, however, assert that *Dorman*, 23 F.3d at 1360, stands for the proposition that the forum state has no interest in compensation of tort victims who are residents of another state. Some time ago, in *Reid-Walen v. Hansen*, 933 F.2d 1390 (8th Cir. 1991), the Eighth Circuit Court of Appeals considered the interest of the defendant's home state in litigation arising from an injury that occurred on property that the defendant owned abroad, albeit for purposes of resolving the defendant's *forum non conveniens* challenge, not for purposes of a conflict-of-laws analysis. Although the precise context of the question of the forum's interest in *Reid-Walen* was different than it is here, the court's observations about the interest of the defendant's home forum in tort litigation are no less instructive. The court observed that, "by virtue of the fact that it [wa]s the defendants' home," a particular state "ha[d] a significant interest in the litigation." *Reid-Walen*, 933 F.3d at 1400. More specifically, the court observed,

> The defendant's home forum always has a strong interest in providing a forum for redress of injuries caused by its citizens. Stewart, *Forum Non Conveniens: A Doctrine in Search of a Role*, 74 Cal.L.Rev. 1259, 1283 (1986). Any economic burden to the forum is justified because the defendant has undertaken both the benefits and burdens of citizenship and of the forum's laws. *Id.* at 1282, 1284.

*Reid-Walen*, 933 F.2d at 1400. Thus, Iowa's interest in this litigation is not founded solely on an interest in fully compensating tort victims, which interest might be somewhat mitigated where, as here, the victims are not residents of Iowa, but upon Iowa's interest

in providing a forum for redress of injuries caused by its citizens. Thus, in the present case, Iowa has a further interest in application of its law, because it is the principal defendant's home state and that defendant's allegedly tortious conduct occurred here.

Therefore, the § 6(2)(b) and (c) factors weigh in favor of application of Iowa law.

### c.     *Ease of determination and application of the law*

The final § 6(2) factor of relatively greater significance in a tort case—at least according to Comment *b* to RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145—is the § 6(2)(g) factor, "ease in the determination and application of the rule to be applied." In *Veasley*, however, the Iowa Supreme Court observed that this factor was "of little importance" in the case before it, because "[e]ither [the defendant] may be held liable or it may not," and because "[n]o esoteric or complex substantive laws are involved." *Veasley*, 553 N.W.2d at 898. Similarly, here, this federal court finds no significant impediment to its ability to determine and apply either Idaho or Iowa law. Thus, this factor is "of little importance" here. *Id.*

### d.     *Other § 6(2) factors*

Although the remaining § 6(2) factors may be of relatively lesser importance in this tort case, the court will nevertheless consider them, at least briefly. Those factors are "(d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, [and] (f) certainty, predictability, and uniformity of result." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2)(d)-(f).

The Iowa Supreme Court observed in *Veasley* that "[t]he protection of justified expectations is, according to several modern authorities, of scant relevance in automobile cases." *Veasley*, 553 F.3d at 898. The court explained that this was so in the case before it, because "'no one plans to have an accident'"; the defendant was a nationwide trucking company, and the trip commenced in one of several states with owner liability statutes, so

that it would be reasonable for the defendant to expect such liability and to protect itself accordingly; and the defendant registered the truck in question in Iowa and chose Iowa as its principal place of business, so that it could reasonably have foreseen that Iowa law would apply. *Id.* at 898-99 (quoting *Milkovich*, 203 N.W.2d at 412). For similar reasons, this factor is of "scant importance" in this products liability case: No one planned to have an accident with the allegedly defective "slide out" room; Winnebago sells RVs for use nationwide, so that it should have expected liability for a defective RV or component anywhere in the country and should have protected itself accordingly; Iowa products liability law is not so abnormal that Winnebago would be surprised by its rules; and Winnebago's principal place of business is in Iowa, so that Winnebago could have reasonably foreseen that Iowa law would apply to a tort action involving an allegedly defective RV or component. Kwikee also should have foreseen the applicability of Iowa products liability law, where it contracted with an Iowa business to produce components for that Iowa company's products. Thus, nothing about this purportedly less important factor weighs against the application of Iowa law.

For some of the same reasons, "the basic policies underlying the particular field of law," RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2)(e), certainly do not weigh against application of Iowa law. Tort law generally, and products liability law in particular, is concerned with compensation of victims, whether fully, under Iowa law, or within certain caps, under Idaho law. Again, Iowa tort and products liability law is not so abnormal that it is out of step with the policies underlying the particular fields of law at issue here.

Finally, "certainty, predictability, and uniformity of result," RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2)(f), are not necessarily realistic concerns in a case involving a "mobile" product, such as an RV here or an automobile in *Veasley*, because

35

"[c]onflicting laws are a result of the combination of a mobile society and America's federal system in which the states have primary control over the regulation of these matters [because the combination] will always work against uniformity." *Veasley*, 553 N.W.2d at 898 (internal quotation marks and citations omitted). Thus, this factor also does not weigh against the application of Iowa law.

### 7. Conclusion

Upon consideration of the § 145(2) "contacts" and the § 6 "factors" that make up the "most significant relationship" test for conflict-of-laws determinations under Iowa law, the court concludes that Iowa has the dominant interest in the issues presented and that application of Iowa law is in keeping with the pertinent factors. Therefore, the substantive legal issues in this case will be governed by Iowa law, and the defendants' motion for summary judgment, seeking application of Idaho law, will be denied.

## B. The Joneses' Motion For Leave To Amend Their Complaint

Also before the court at this time is the Joneses' August 11, 2006, Motion For Leave To Amend Their Complaint To Add A Claim For Punitive Damages Against Defendants Winnebago And Kwikee (docket no. 71). As mentioned above, Winnebago and Kwikee jointly resisted that motion on August 25, 2006 (docket no. 72), and the Joneses filed a Reply in further support of the motion on August 30, 2006 (docket no. 75). As was also explained briefly above, the issues presented in the motion to amend are intertwined with the conflict-of-laws issues presented in the defendants' motion for summary judgment, because the defendants assert that the Joneses' amendment to seek punitive damages is barred under Idaho law until they establish a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages.

36

### 1.    Arguments of the parties

In support of their motion for leave to amend their Complaint to add a prayer for punitive damages, the Joneses argue that leave to amend should be freely given.  They also argue, at great length, all of the reasons that punitive damages are appropriate against both defendants in this case.  While the defendants concede that leave to amend should be freely given, they contend that Idaho law should apply to the substance of the amendment, and that, under Idaho law, a plaintiff may only amend a complaint to add punitive damages after a hearing by the court where the plaintiff can establish "a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages," quoting IDAHO CODE § 6-1064(2) (2005).  They also contend, at some length, that were the court to hold the hearing required under Idaho law, the Joneses could not meet the required standard.  In reply, the Joneses assert that Iowa law should apply to the issue of punitive damages, as it should to all other issues in this case, and that the differences between Iowa and Idaho law on punitive damages provide further reasons why Iowa has the greater interest in this case.  More specifically, they point out that, under Iowa law, 75% of any award of punitive damages may be designated to the civil reparations trust fund administered by the state court administrator pursuant to IOWA CODE § 668A.1(2), so that Iowa has an interest in the application of its punitive damages law.

### 2.    Standards for leave to amend

Rule 15(a) of the Federal Rules of Civil Procedure provides for amendment of pleadings, as follows:

> **(a) Amendments.**  A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so

> amend it at any time within 20 days after it is served.
> Otherwise a party may amend the party's pleading only by
> leave of court or by written consent of the adverse party; and
> leave shall be freely given when justice so requires. A party
> shall plead in response to an amended pleading within the time
> remaining for response to the original pleading or within 10
> days after service of the amended pleading, whichever period
> may be the longer, unless the court otherwise orders.

FED. R. CIV. P. 15(a). Here, the defendants answered the Joneses' Complaint before the

Joneses sought leave to amend their Complaint to seek punitive damages. Therefore, the

Joneses require leave of court to file their amendment. *See id.*

As the Eighth Circuit Court of Appeals recently explained,

> As a general rule, leave to amend "shall be freely given when
> justice so requires." Fed. R. Civ. P. 15(a). The court may
> disallow amendment for various reasons, however, including
> "undue delay, bad faith or dilatory motive on the part of the
> movant, repeated failures to cure deficiencies by amendments
> previously allowed, undue prejudice to the opposing party by
> virtue of allowance of the amendment, [or] futility of
> amendment." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct.
> 227, 9 L. Ed. 2d 222 (1962).

*Moore-El v. Luebbers*, 446 F.3d 890, 901-02 (8th Cir. 2006). The district court's ruling

on a motion to amend is reviewed for abuse of discretion. *See id.*, 446 F.3d at 901 ("We

review the denial of a motion to amend [pursuant to Rule 15(a)] for abuse of discretion.");

*Baker v. John Morrell & Co.*, 382 F.3d 816, 830 (8th Cir. 2004) ("We review the district

court's decision to grant or deny a motion to amend for an abuse of discretion.").

### 3.    *Application of the standards*

In this case, it appears that the defendants are asserting futility of the proffered

amendment, *see id.* (citing "'futility of the amendment'" as a ground for denying leave to

amend (quoting *Foman*, 371 U.S. 182 )), because they assert that the amendment is barred

by Idaho law, which they contend is applicable. The court concluded above, however, that Iowa law applies to the substantive questions in this case, and the defendants have cited no comparable bar under Iowa law to the pleading of a prayer for punitive damages. Moreover, the Joneses' pleading of the requirements to obtain punitive damages, under Iowa law, is not so patently inadequate as to bar an amendment to seek punitive damages. *See* IOWA CODE § 668A.1 (to obtain punitive damages, the plaintiff must prove "by a preponderance of clear, convincing, and satisfactory evidence, the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another"). Under the circumstances, the court concludes that leave for the Joneses to amend their Complaint to seek punitive damages should be "freely given." FED. R. CIV. P. 15(a); *Moore-El*, 446 F.3d at 901 (citing the rule).

## III. CONCLUSION

Applying Iowa's "most significant relationship" test to determine conflict-of-laws questions, the court concludes that Iowa law is applicable to the substantive legal questions presented in this case. Thus, the defendants' motion for summary judgment, seeking a ruling that Idaho law applies instead, must be denied. Similarly, because Iowa law is applicable in this case, and Iowa law does not stand as any bar to pleading a prayer for punitive damages, the Joneses' motion for leave to amend their Complaint to seek punitive damages will be granted.

THEREFORE,

1.    Winnebago's May 23, 2006, Motion For Partial Summary Judgment (docket no. 50), joined in by Kwikee on May 25, 2006 (docket no. 51), is **denied** in its entirety; and

39

2.     The Joneses' August 11, 2006, Motion For Leave To Amend Their Complaint To Add A Claim For Punitive Damages Against Defendants Winnebago And Kwikee (docket no. 71) is **granted.**

**IT IS SO ORDERED.**

**DATED** this 1st day of November, 2006.

_Mark W. Bennett_
_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA